## OLIVER ROSE *versus* SOLOMON SIBLEY
September 4, 1839.

H. S. Cole & A. S. Porter, attornies for plaintiff in error.
E. Farnsworth & D. Goodwin, attornies for defendant in error.

[INDORSEMENT]

Rose
vs.
Sibley

$\left.\begin{array}{l} \end{array}\right\}$ 1ˢᵗ Circuit
Mem° of opinion—
Aug. 1839—
Jugᵗ affirmed

[OPINION]

Oliver Rose
vs.
Sol. Sibley Survivor
of himself & A. G. Whitney

$\left.\begin{array}{l} \end{array}\right\}$

This cause is before this court on Writ of Error brought to reverse a Judgᵗ rendered in the Circuit Court for the County of Wayne.

The suit was originally brought in the Circuit Court by Rose the present Plff in Error against the Deft, Survivor of himself, and Andrew G. Whitney, deceased, late partners,— in the profession and practice of law.—

The Plff declared specially on the undertaking of Deft, and also on the common money counts, and an account stated, to which the Deft pleaded the general issue. The Counsel for the parties afterwards waived the trial by jury, and upon the facts set forth in a case made and stated between them, submitted the whole matter to the decision of the Court.

The material facts stated in the case are the following:

Mark H. Sibley of Canandaigua, the Attorney of Oliver Rose transmitted to Sol. Sibley in Janʸ 1819 an exemplification of a Judgᵗ rendered in the State of New York in favor of Rose vs. Wm G. Taylor—When this claim was recᵈ by Sol. Sibley he was in partnership with Mr. Whitney—Sibley and Whitney in their joint names prosecuted the claim to and obtained judgᵗ thereon in the Sup. Court in October 1822, for the sum of 452.56:

—On the 10 Sept. 1823, a fi. fa. was issued by S. & W., but nothing was made thereon.

The Deft. Sol. Sibley was appointed a Judge of the Sup. Court of the Territory of Michigan on the 11th Feb^y 1824, and continued in commission until after the Judg^t in this Suit below, and wholly ceased practice as an Att^y & Counsellor at law during that time. Sibley and Whitney, as between themselves settled their partnership business, leaving all unclosed business of their clients in the hands of Whitney, who was generally considered a good lawyer, a vigilant collector, responsible and punctual in paying over money.

By the agreement between them, the fees which had accrued up to the time of the appointment of Sibley as judge were to be equally divided between them, all fees accruing on any unfinished business after the said appointment, were to accrue to the benefit of Whitney.

On the 12 April, 1824, Whitney filed a praecipe for a Ca. Sa. on the said judg^t signed by himself for the late firm of Sibley & Whitney which was issued, which was returned non est. Mark H. Sibley was the agent of Rose, and had an interest in the judg^t obtained in the State of N. Y. against Taylor.

On the 25 Nov. 1824 Whitney filed a praecipe signed by himself alone, for an alias fi. fa.—upon which there was made the sum of $263.88, which was paid over to Whitney in November 1825, and after deducting fees, costs, and charges, there remained in Whitney's hands $216.73, which was deposited by him in Bank to his individual credit. Mark H. Sibley was in the City of Detroit in the Summer of 1825 on a visit. Mr. Whitney died in September 1826—and the money collected as above stated, was never paid over.

No other money was collected on the original judg^t of Rose vs. Taylor. Mr. Whitney's estate was represented in-

solvent—and no claim on the part of Rose was ever exhibited against the estate, and the time for presenting claims against the estate expired before the commencement of this suit below.

There are also several letters from Sibley and Whitney to Mark H. Sibley reporting the progress of the suit against Taylor, and a letter from Mark H. Sibley, all of which are annexed to, and made a part of the case submitted, but to which it is not necessary particularly to advert at present.

Upon this statement of facts it was submitted to the judges of the Circuit Court, whether the Deft Sol. Sibley was liable in this action for the Pay$^t$ of the [$]216.73 collected by Whitney.—if the court should be of the opinion that he was liable then judg$^t$ to be entered against him for that sum & interest thereon.—And if not judg$^t$ was to be entered for the Deft for costs.

The arguments before this court, as to the liability of the Deft, have been, by the Counsel of both sides, based upon the facts set forth in the case submitted to the Circuit Court.—

The principles of law relating to copartners, and their liabilities, have been adverted to, as applicable to the present case; but the view which we have taken of this case renders it unnecessary to determine any of the points raised upon this subject. The case agreed upon, and submitted to the judges of the Circuit Court, did not contain all the facts necessary to turn the case into a question of law.

Some facts were required to be found by the Court, before it could be determined whether the Deft was liable in this case as a retiring partner, and as there was evidence contained in the case submitted, tending to prove those facts, the determination of such facts by the Court to which the cause was submitted, must be final and conclusive.

On looking over the evidence submitted it is manifest

that it tended to prove that Mark H. Sibley had a knowledge that the Deft had wholly retired from the practice of the law, and that Mr. Whitney was proceeding in his own name to collect the money on execution, and although it does not appear upon what grounds the Court below decided the case, yet there can be no doubt that the evidence submitted had a material bearing upon the merits of the case and the decision of the Court. Upon this part of the case this court cannot decide, having no authority, as a court of errors, to review the determination of the Court below settling the facts upon the evidence submitted—

But there was another objection taken by the counsel for the Deft, that this court, on a writ of error, has no authority to revise the decision of the court below on a statement of facts submitted to that court; however clearly and well ascertained the facts may be which are contained in the case, and properly presenting a case, to which the rules of law may be conveniently and well applied. It was contended that by no principles of the Common [Law] could this court take jurisdiction of such a case on writ of error: that it was like a submission to arbitration, where the arbitrators determine the facts and the law, and whose decis[ion] is final and conclusive—In support of this position no authorities ·were cited by the Deft's counsel,—But on examining the authorities many case[s] are found sustaining the objection.

a. 3 Peters 369.   b. 2 Greenl. R. 336.   c. 7 Mass. R. 380.   d. 9 do. 329.

These decisions go to establish the proposition, that where the facts are not determined and spread upon the record in virtue [of] some Statutory regulations, or according to the principles and usages of Courts proceeding according to the course of the common law, they cannot be reviewed on writ of error, by reason that the court into which the record is

removed has no jurisdiction of such matters of fact, or the determination thereon. The statement of facts agreed on in the court below was sufficient to give jurisdiction to that Court of the matters submitted, but it forms no part of the record so as to authorise its removal to this court on a writ of error. It is not therefore so much the undoubted certainty of the facts, as it is the mode and manner of authentication which will confer jurisdiction upon this court to revise and correct the proceedings of subordinate courts on writ of error. This was the assumed principle in the case in 3 Peters, —The point of difference between the judges of the Circuit Court which alone gave the Sup. Court of the U. S. jurisdiction, not being certified according to the Act of Congress, although it might easily have been ascertained by inspection of the whole record—the Court refused to entertain jurisdiction So also in 2 Greenleaf, where the parties assented to the facts stated in a Bill of Exceptions, but which was not regularly certified by the judge who tried the cause. And in the 9 Mass, where in the statement of facts submitted to the Court of Com. Pleas, the parties further agreed that it should form a part of the record, and be removed by either party, to the Sup. Court on writ of error, the Sup. Court say that the consent of parties cannot give that court jurisdiction in a case where it is not conferred by law—and that if either party intends or expects to bring a writ of error and wishes the facts spread upon the record it will be necessary to have the facts found by the jury in a special verdict, according to the English practice.

5 Cowan R. 587 Rensselaer Glass Factory vs. Reid in Court of Error. Case referred by the Court to Refferees, and on their report being made, objections were made and a statement of facts agreed upon by the Atty and certified and signed by the presiding Judge—and by writ of error

was removed to the Court of Errors, it was then objected by the Counsel for Deft in Error that the case made and certified was no part of the record, and could not therefore be removed and revised on writ of error.

Sanford, Chancellor and Colden & Spencer Senators in giving their opinions tacitly admitted that if the case were voluntarily made by the parties that the objection would have been valid—But they overruled the objection solely on the ground that the reference of the cause was directed by the court under the Act of the Legislature and not by consent of parties—and that the Legislature did not intend in this mode to put it out of the power of either party to have his case reviewed in the Sup. Court of Errors—